IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

M & M HOLDINGS, INC.,

        PLAINTIFF,

vs.                                                    No. 06-4031-SAC

STATE AUTO PROPERTY
AND CASUALTY INSURANCE CO.,

        DEFENDANT.

MEMORANDUM AND ORDER

        This diversity jurisdiction case asking the court to construe an insurance contract comes before the court on the parties' cross-motions for summary judgment on the issue of liability. For the reasons set forth below, plaintiff's motion shall be granted.

**Facts**

        The parties do not dispute the relevant facts. Plaintiff owns a convenience store and gas station in Lawrence, Kansas.  Buried on plaintiff's property were four 12,000-gallon fuel storage tanks which held diesel, premium, midgrade plus, and regular unleaded fuel. The tanks

were buried in a storage pit which had been backfilled with sand or soil, then covered with a concrete slab.

Plaintiff purchased a business owner's policy of insurance from defendant effective January 1, 2005, whereby, subject to the terms of the policy, defendant agreed to pay plaintiff for loss or damage to the subject premises. Plaintiff complied with all the requirements of the insurance contract. Plaintiff's premises were damaged when three of the four underground storage tanks rose from their pit and broke through the surface above them, damaging the tanks, their associated plumbing, and the concrete slab which had overlaid them.

Plaintiff filed a claim against the insurance policy for the damage caused by the "floating" tanks. In response, defendant hired a professional engineer to investigate the claim and determine the cause of the tanks' surfacing. The parties have stipulated to the facts and conclusions in the engineer's report.

The report noted light rain on the day of the incident and significant rainfall in the area in the weeks preceding the incident. The engineer concluded that because of recent precipitation, ground water levels would have been "somewhat elevated" on the date of the incident.


Dk.16, Exh. A, p.*2*.

According to the operator's estimate reflected in the report, the diesel, premium, and midgrade plus tanks which arose contained less than 3%, 4% and 8% of their capacity of fuel on the date in question. They usually contained low volumes of fuel because demand for these products was low and the cost of maintaining their inventory was high. The tank which stored regular unleaded fuel and which remained in its pit contained a higher volume of fuel, as was usual. The operator also noted that the station had sold a significant amount of gasoline the day before this incident and that a fuel truck was scheduled to refill the tanks. According to the engineer, the empty space in the tanks was filled with air.

Based on the facts made known to the engineer, he concluded:

> ...the fuel tanks at the above referenced site floated up through the ground pushing the concrete slab upward due to normally occurring ground water conditions and the fact that the two most northern tanks were nearly empty. The buoyancy of these nearly empty tanks was greater than the weight of the sand and poured concrete slab that was sitting on top of the tanks. Once the buoyancy was greater than the weight they simply rose upward much as a submarine will rise to the surface.

(Dk.16-2, Exh. A, p.2).

Defendant subsequently denied the claim, citing the "earth movement" and "water" exclusions in the insurance contract. The relevant

part of the "earth movement" exclusion reads:

> B. Exclusions
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
> . . .
> > b. Earth Movement
> >
> > (1) Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting...

The "Water" exclusion of the policy states:

> 1. We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
> . . .
> > g. Water
> > . . .
> > (4) Water under the ground surface pressing on, or flowing or seeping through:
> > (a) Foundations, walls, floors or paved surfaces;
> > (b) basements, whether paved or not; or
> > (c) Doors, windows, or other openings...

Dk. 16, Exh. B, p.3. The insurance policy does not define the terms "earth movement," "earth," "walls," or "paved surfaces."  Plaintiff challenges the

4

applicability and clarity of the "earth movement" and water exclusions. [1]

**Summary Judgment Standards**

On summary judgment, the initial burden is with the movant to point out the portions of the record which show that the movant is entitled to judgment as a matter of law. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992), *cert. denied,* 506 U.S. 1013 (1992). If this burden is met, the non-movant must set forth specific facts which would be admissible as evidence from which a rational fact finder could find in the non-movant's favor. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The non-movant must show more than some "metaphysical doubt" based on "evidence" and not "speculation, conjecture or surmise." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether the evidence is so one-sided that one party must prevail as a matter of law."

---

[1] Thus this case asks,
Do earth movement or water provisions exclude recovery,
For damage to a gas station and associated property,
When underground tanks holding little gasoline,
Became quite buoyant and rose like submarines?

*Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986).

No factual dispute is present. Therefore, this court is presented with the legal questions of what the terms of the contract mean and how the terms apply to the stipulated facts. *U.S. Fidelity & Guar. Co. v. Morrison Grain Co., Inc.*, 734 F. Supp. 437, 442 (D. Kan. 1990), *aff'd,* 999 F.2d 489 (10th Cir. 1993).

**Kansas Law**

*Choice of Law*

Because the court has diversity jurisdiction over this case, the court first applies Kansas' choice-of-law principles. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) ("Generally, a federal trial court sitting in diversity applies the forum state's choice of law [principles]"). "Kansas follows the general rule that the law of the state where the insurance contract is made controls." *Safeco Ins. Co. v. Allen*, 262 Kan. 811, 822 (1997).

The record does not include sufficient facts for this court to determine where the insurance contract was made, however, and the contract itself does not include a choice of law provision. The court is left to apply the substantive law of the State of Kansas in accordance with the

parties' agreement to such in the pretrial order.

### *General law*

In Kansas, "If the insurer intends to restrict or limit coverage provided in the policy, it must use clear and unambiguous language in doing so." *McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251, 254 (10th Cir. 1993) (quoting *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 248 Kan. 657, 659 (1991)). Exceptions are narrowly construed against the insurer because once it has expressed coverage through broad promises, the insurer has the duty to explicitly define any limits. *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 327 (1998).

"In determining whether ambiguity exists, the language of the contract is to receive a fair, reasonable, and practical construction." *Id.* Terms are to be taken in their ordinary, plain, and popular sense. *Bush v. Shoemaker-Beal*, 26 Kan. App. 2d 183 (1999). Ambiguity is not found merely because the parties disagree as to the meaning of a phrase. Ambiguity does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of two or more possible meanings is the proper meaning. *Marquis*, 265 Kan. at 324. "The test to determine whether an insurance

contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." *Colfax v. Johnson*, 270 Kan. 7, 11 (2000). When "a natural and reasonable interpretation" of contract language leaves uncertain which of two or more meanings is proper, ambiguity results. *Catholic Diocese of Dodge City v. Raymer,* 251 Kan. 689, 693 (1992).

Where there is no ambiguity, there is no need for either judicial interpretation or the application of liberal rules of construction. *American Media v. Home Indem. Co.,* 232 Kan. 737, 740 (1983). That is, a court must enforce an unambiguous contract according to its terms, but when ambiguity is found, the construction most favorable to the insured prevails. *Id.*

### The "Earth Movement" Exclusion

The parties raise two questions regarding the applicability of the earth movement clause: 1) whether movement of earth caused the damage to the property, and 2) whether the material which backfilled the tank pits may be classified as "earth" for purposes of this exclusion.

#### *The causal relationship.*

The earth movement exception excludes "damage caused

directly or indirectly by... any earth movement... such as earth sinking, rising or shifting." "The ... term[s] 'earth sinking, rising or shifting' all refer to vertical or horizontal movements of earth or soil, wet and dry." *Stewart v. Preferred Fire Ins. Co.,* 206 Kan. 247, 249-250 (1970). Applying a narrow construction to the phrase "caused directly or indirectly by...earth movement," the court reads the contract to exclude earth movements that actually cause damage.

Defendant argues that had the earth or sand above the tanks remained fixed, the tanks could not have ascended and there would have been no damage, thus the "movement of the unstable strata was the direct and indirect cause of the loss." Dk. 18 p. 5. The court disagrees.

The court does not read the contract to exclude all incidents accompanied by earth movement. Here, there is no evidence that any movement of the earth or sand above or around the tanks was the proximate cause of the tanks' surfacing. Instead, the engineer's report indicated that the tanks' buoyancy, coupled with naturally occurring ground water conditions, caused the tanks to surface. Unlike the earth movement in cases relied upon by defendant, any "earth movement" in this case was not a "direct or indirect cause" of the damage, but rather was a result of

9

another cause. Therefore, the court finds that the damage was not caused by "earth movement" as required by the relevant provision in the contract.

### *"Sand" as "earth."*

Plaintiff additionally contends that "sand" is a different material than "earth," and that the exclusion does not apply because only "sand" and no "earth" moved during the loss. (Dk.16, p.7-8). The parties tacitly agree that only that matter which had been used for backfill was displaced during the surfacing of the tanks.

The engineer's report refers to the matter which was used to backfill the tank pits as both "soil" and as "sand." He first states: "The weight of *the backfilled soil* and the concrete slab above was not enough to compensate for the buoyancy of the tanks and hold them into ground." Dk.15, Exh. A, p. 1. (emphasis added). He later states, however, "I did note a significant amount of sand around the tank. When the tanks were installed the area was *back filled with sand instead of soil*." *Id.*, p. 2 (emphasis added). Because these contradictory statements are not otherwise explained and are not subject to consistent interpretation, the stipulated facts fail to show which matter, *i.e.*, sand or soil, was displaced when the tanks arose from their pit.

Nonetheless, defendant takes the affirmative position in its brief that only sand surrounded the tanks. *See* Dk. 18, p. 5 ("... the undisputed situation was that the tanks were buried in sand, ...and ascended, with the sand above and to the sides..." "As a matter of logic, that rising of the M & M tanks was accompanied by earth movement, specifically that of the sand in which the tanks were placed.") Considering defendant to be bound by its assertion that only sand and not soil surrounded the tanks, the court thus determines whether the term "earth" in the earth movement exclusion includes sand.

The term "earth" is not defined in the policy, but has multiple meanings. *See Duensing v. State Farm Fire and Cas. Co.*, 2006 Okla. Civ. App. 15 (2005) (listing definitions of earth). The definition of "earth" in Black's Law Dictionary (6th Ed. 1990) is "soil of all kinds, including gravel, clay, loam, and the like, in distinction from the firm rock." "Sand" is defined in Webster's New Collegiate Dictionary (1976) as, "1a. loose granular material that results from the disintegration of rocks, consists of particles smaller than gravel but coarser than silt, and is used in mortar, glass, abrasives, and foundry molds." *See* Webster's Third New International Dictionary (1981) (containing similar definition). Although "earth" includes

gravel, sand is not gravel as the denotations above indicate.

Under these facts, and as an alternative holding to the court's ruling on the causation issue, the court finds that the term "earth" as used in this policy does not include the "sand" which defendant concedes was used to backfill the pits which held the tanks prior to their ascendance to the surface. Accordingly, the earth movement exclusion is inapplicable.

**The Water Exclusion**

Defendant additionally contends that the damage is excluded by the water exclusion, again raising definitional and causal issues for the court.

### *Tank surfaces as "walls."*

The relevant policy language excludes "loss or damage caused directly or indirectly by any... water under the ground surface pressing on, or flowing or seeping through... foundations, walls, floors or paved surfaces..." In reliance on the engineer's report, defendant first contends that the ground surface water pressed on the "walls" of the tanks, causing them to surface. Plaintiff counters that the underground tanks which surfaced do not have "walls."

The word "wall" may be construed in many different ways, as

evidenced by Webster's identification of at least six potentially relevant definitions for the word.[2]  These definitions fall into two distinct categories. "Walls" may mean works of masonry or some other material which are structural features of a building, or "walls" may be more broadly construed to mean any partition that divides space.

Because "walls" appears in a list of similar items in the insurance contract, the court applies the rule of construction that words or phrases which have doubtful or obscure meanings when taken alone are interpreted in light of the other terms located in the same passage and in light of the purpose of the clause where the term is found.  *See Farm Bureau Mut. Ins. Co. v. Carr*, 215 Kan. 591, 596 (1974) (citing Black's Legal Dictionary and applying *noscitur a sociis*[3] rule of contract

---

[2]"Wall" includes the following definitions:
**1a:** a high thick masonry structure forming a long rampart or an enclosure chiefly for defense... **b:** a masonry fence around a garden, park, or estate **c:** a structure that serves to hold back pressure (as of water or sliding earth) **2:** one of the sides of a room or building connecting floor and ceiling or foundation and roof... **5:** a material layer enclosing space <the ~ of a container> <heart ~s> **6:** something resembling a wall (as in appearance or effect); *esp.* : something that acts as a barrier or defense...
Webster's New Collegiate Dictionary (1980) (bold and italics in original).

[3]This Latin phrase means "it is known from its associates."

construction). The court finds that the applicable definition of "walls" for purposes of this contract is one that refers to parts of a building since the other terms listed in the same passage, *i.e.*, "foundations," "floors," "basements," "doors," and "windows," are commonly used to describe parts of a building but are not usually used to describe the outside of an underground storage tank.

Therefore, the court finds that the term "walls" as used in this contract means the "sides of a room or building connecting floor and ceiling or foundation and roof." See *Employers Mut. Cas. Co. v. Penn Township*, 2005 WL 351041, *4 (E.D. Pa. 2005) (construing "wall" to exclude the sides of underground storage tanks). Because a reasonably prudent insured would not understand the term "walls" as used in this contract provision to include the sides of an underground storage tank, the water exclusion is inapplicable.

### *The causal relationship*

Alternatively, defendant relies upon the language of the water exclusion for damage "caused directly or indirectly by...water under the ground surface pressing on ...paved surfaces," "regardless of any other cause or event that contributes concurrently or in any sequence to the

loss." Dk. 18, p. 6.  The parties tacitly agree that the concrete slab which overlaid the tanks and which was damaged was a "paved surface,"[4] within the meaning of this term in the contract.  No contention is made that any part of the underground tanks was a "paved surface."

The sole question is whether defendant has shown the existence of a sufficient causal link between the events.  As defendant suggests, the exclusion could apply to events which have a but-for causal relationship to pressure created by underground water. Without the pressure from the underground water, the tanks would not have been buoyant enough to have risen to and broken through the surface, thus no damage would have occurred.  The damage to the paved surface could thus be characterized as an indirect consequence of underground water pressure on a paved surface.

But a more complete and thorough reading of the exclusionary language suggests that the excluded damage must be linked to underground water acting on a particular object, *i.e.*, the paved surface. Under this interpretation, the present event is not excluded because the

---

[4]*See generally AGK Holdings, Inc. v. Essex Ins. Co.*, 142 Fed. Appx. 889, 892, 2005 WL 1869514, *4 (6th Cir. 2005) (defining "paved surface" for purposes of similar water exclusion).

buoyancy of the tanks was the result of water under the ground surface pressing on the tanks, which in turn pressed on, then broke through, the paved surface above them. Simply stated, there is no evidence that underground water pressed on a paved surface, as is required by the terms of the contract.

At best, this clause is ambiguous insofar as these underground storage tanks are concerned. *See Employers Mut. Cas. Co. v. Penn Township*, 2005 WL 351041, *4 (E.D. Pa. 2005) (finding identical water exclusion to be ambiguous for different reasons). The court, strictly construing the clause against defendant, concludes, as a matter of law, that the damage in this case was not caused directly or indirectly by underground water pressing on a paved surface.

**Conclusion**

Insured parties are afforded the benefit of any doubt in ambiguous contract terms. *Marquis*, 265 Kan. at 327. As the insurer, defendant had a duty to articulate exclusions with clear and unambiguous language. *Id*. Because the "earth movement" exclusion does not apply and because the water exclusion is at best ambiguous, the court finds defendant liable for the damage. Therefore, plaintiff shall be granted

summary judgment.

IT IS THEREFORE ORDERED that plaintiff's motion for partial summary judgment on the issue of liability (Dk.15) is granted.

IT IS FURTHER ORDERED that defendant's motion for partial summary judgment (Dk.17) is denied.

Dated this 25th day of May, 2007, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge